02-10-143-CR










 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NO. 02-10-00143-CR

 

 


 
 
 EDWARD REESE
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 THE STATE OF TEXAS
 
 
  
 
 
 state
 
 


 

----------

 

FROM THE 297th
District Court OF TARRANT COUNTY

----------

 

MEMORANDUM
OPINION[1]

----------

A
Tarrant County jury found appellant Edward Reese guilty of aggravated assault
with a deadly weapon.  The same jury assessed his punishment at imprisonment
for fifteen years.  The issue on appeal is whether there was sufficient
evidence presented at trial to prove that Reese was not acting in self
defense.  We hold that there was.

The
Evidence

Complainant
Jessie Anderson testified that he was fifty-one years old, that he was
disabled, and that he lived with his wife, mother, and children in an apartment
in the Village Creek Town Homes public housing project in Fort Worth.  On June 21, 2008, at approximately 11:15 p.m., Anderson returned home after attending his
nephew’s birthday party.  While at that party, he had consumed four beers. 
When Anderson drove up to his residence, his neighbor Robert Brown invited him
to join Brown and three others, all of whom were sitting on a bench and chairs
in front of Brown’s apartment.  Anderson went inside his apartment, grabbed a
beer and a half-pint of brandy, and then joined Brown and the others. 
Approximately fifteen minutes later, Reese came out of his apartment, which was
located next to Brown’s, and also joined them.

As
the evening wore on, everyone eventually left, except for Anderson, Brown, and
Reese.  During that time, Anderson and Reese shared Anderson’s brandy. 
Finally, Brown and Reese, who were clearly intoxicated, began arguing with each
other.  While Brown and Reese argued, Anderson, who was not paying attention to
the argument, remained off to the side telephoning “text messages” to a
friend.  However, when Brown tried to throw Reese off the bench to get him to
go home, Anderson told Brown not to do that because Reese was so drunk.  Reese
then asked Anderson what he thought about the subject of the argument. 
Anderson told Reese that Reese did not know all the relevant facts.  Anderson
added that he was not involved in the subject of the argument and that he
wanted to be left out of it.

At
that point, Reese turned on both Anderson and Brown and repeatedly called them
obscene names.  He stated that he used to like Anderson but now he did not, and
that he was going to his apartment to get a gun with which to kill Anderson.  Reese
then started walking toward his apartment, still calling Anderson an obscene
name and threatening to get a gun with which to shoot him.  Anderson told Reese
that he did not have a gun, but Brown stated that Reese did have a gun.  At
that point, Anderson approached Reese, grabbed his shirt collar and shook him,
and told him to quit making threats and to go home.  (Anderson denied putting
his hands around Reese’s neck or any part of his body.)

Reese
went into his apartment and moments later stepped back outside with a revolver
in his hand.  He pointed it at Anderson saying, “Motherf_ _ _ _ _ g n_ _ _ _r,
I told you I was going to kill you.”  Anderson turned to run and Reese fired
one shot at him.  Anderson fell down on his hands and knees, got up, and ran. 
Reese chased him, but Anderson was eventually able to hide from Reese. 
Anderson did not go into his apartment, which was located in the next building,
because his family was there, and he was afraid Reese might shoot through the
windows.  Anderson called “911” on his cell phone while running from Reese. 
Anderson came out of hiding when the police arrived.  Blood was dripping from
Anderson’s finger, and a police officer told him that it appeared as if he had
been hit.  Anderson then directed the police to Reese’s apartment.  Anderson
was eventually taken to Harris Medical Hospital and was treated for a gunshot
wound on his left elbow.

Gilbert
Lara, a three-year veteran of the Fort Worth Police Department, testified that
on June 22, 2008, at 12:18 a.m., he and police officer Donovan were dispatched
to 5728 Fitzhugh Street in Fort Worth.  They arrived at the scene at 12:28 a.m.
and spoke with Anderson.  Anderson appeared upset and told them what had
happened to him.  They drove to Reese’s apartment while Anderson remained in
the patrol car.  They knocked on Reese’s door and when he answered, Lara
noticed that Reese smelled of alcohol.  Reese, when questioned, said he had
gotten into a heated argument with Anderson and that Anderson had threatened to
harm him.  Reese did not specify what Anderson had allegedly threatened to do. 
Reese stated further that when Anderson let him go, he told Anderson that he
was not going to let Anderson threaten him, and that he then went inside his
apartment, grabbed his revolver, and fired one round at Anderson.

When
Lara asked Reese where the gun was, Reese claimed that he threw it near a
dumpster.  Donovan then accompanied Reese to the dumpster to retrieve the
revolver.  While Donovan and Reese were away, Lara found the revolver under a
couch cushion inside Reese’s apartment.  When Lara asked Reese why he had lied
about the gun, Reese said that he did not know.  Lara then arrested Reese and
transported him to the county jail.

When
Lara was asked by defense counsel whether the shot Reese had fired could have
ricocheted off the sidewalk, he said that “anything is possible.”  Lara
identified the revolver in court as the weapon recovered in Reese’s apartment. 
Lara testified further that a medical service call was made for Anderson
because he had an injury to his left elbow.  Reese, however, had made no claim
of injury.  The State also presented testimony concerning the “911” call and
Anderson’s medical records, as well as a forensic expert’s testimony concerning
the revolver.

After
the State rested, Reese, after being admonished outside the presence of the
jury, waived his right not to incriminate himself and took the witness stand.  Reese
testified before the jury that he had lived in the Village Creek Apartments for
about seven years prior to the incident in question, and that he was a
twenty-year veteran of the United States Army.  He told the jury that he was an
expert rifleman.  He also told the jury that he was fifty years old, he wore a
prosthetic foot, and walked with a cane.  Reese testified that he lived next
door to Brown and that they argued all the time, but that they had never raised
their hands against each other.  He said that he had met Anderson around 2006. 
He admitted possessing a .357 Magnum revolver that he kept in his bedroom, and
that it belonged to his nephew.

Reese
said that on the night of the incident he was watching television and drinking
beer.  Sometime after dark, he walked outside and over to the bench where Brown
and Anderson were sitting.  He was not using his cane then because he was
wearing his prosthetic foot.  He and Brown immediately began arguing about a
neighbor “messing around” with a young girl.  (As far as can be determined from
the record, the argument concerned the fact that Brown had previously informed
Reese that a neighbor was “messing” with a young girl.  Reese had then told the
neighbor, who in turn had complained to Brown.)  Anderson told Reese that he
was in the wrong and that made Reese angry.

Reese
described to the jury how he had walked toward his apartment, and had made it
as far as his front porch when Anderson grabbed him tightly around the neck,
choking him, stating that he was going to beat him up, and saying that he did not
care if Reese was disabled.  According to Reese, when Anderson let go of him,
Reese was angry, and he went inside his apartment and retrieved his gun from
his bedroom.  When Reese returned to his front door, Anderson was standing in
the grass just off Reese’s porch and Reese shot at him.  Anderson jumped up and
then fell to the ground before getting up and running away.  Reese denied that
he had chased Anderson.  Reese then went inside his apartment and threw the gun
under the pillow on his couch.  He returned to his front porch and sat there
until the police arrived.

A
police officer asked him whether he had a weapon and Reese admitted that he had
lied, telling them he threw it in the dumpster.  He did not know why he had
lied to the officers.

Reese
maintained that he had not been trying to hit Anderson when he shot at him.  He
claimed that at the time he fired the shot, he believed that he was in imminent
danger.  He claimed further that he fired a single shot at the ground and did
not run after Anderson when Anderson ran away.

Reese
admitted to the jury that he did not tell the police that Anderson had choked
him.  He claimed that Anderson was younger, taller, and more physically able
than he was.

The
Arguments

Reese
argues now that (1) there is no question that Anderson initially attacked him
on his own property, and that he is smaller than Anderson and physically
disabled; (2) the evidence shows that he had returned to his home and got the
firearm only to defend himself; (3) when he went outside again, Anderson was
still facing him in the middle of his front yard; (4) he had been afraid for
his life, and had fired a single shot into the ground so as to scare Anderson
away; and (5) he faced apparent danger and fired in self-defense.  He further
argues that near where Anderson was standing was a concrete sidewalk, and that
the one shot that he fired must have ricocheted and accidentally hit Anderson.

Reese
argues that the evidence adduced at trial was insufficient to support his
conviction because it showed that he acted in self-defense.  The State contends
that there was sufficient evidence at trial to support the jury’s rejection of
Reese’s claim of self-defense.

Analysis

In
our due process review of the sufficiency of the evidence to support a criminal
conviction, we view all the evidence in the light most favorable to the
prosecution to determine whether any rational trier of fact could have found
the essential elements of the crime beyond a reasonable doubt.  Jackson v.
Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Clayton v.
State, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

A defendant has the burden of producing some evidence to
support a claim of self-defense.  Zuliani v. State, 97 S.W.3d 589, 594
(Tex. Crim. App. 2003).  Once such evidence is produced, the burden shifts to
the State to disprove the defense beyond a reasonable doubt.  Saxton v.
State, 804 S.W.2d 910, 913 (Tex. Crim. App. 1991).  This burden of
persuasion does not require the State to produce evidence to refute the
self-defense claim, but requires only that it prove its case beyond a
reasonable doubt.  Id.

Self-defense
is an issue of fact to be determined by the jury, which is free to accept or
reject the defensive evidence.  The jury, as the factfinder, is the sole judge
of the weight and credibility of the evidence.  Brown v. State, 270
S.W.3d 564, 568 (Tex. Crim. App. 2008), cert.
denied, 129 S. Ct. 2075 (2009). 
A jury’s guilty verdict is an implicit finding rejecting the defendant’s
self-defense theory.  Saxton, 804 S.W.2d at 914. 
Thus, in reviewing the sufficiency of the evidence to support the jury’s
rejection of Reese’s self-defense claim, we examine all the evidence in the
light most favorable to the verdict to determine whether any rational trier of
fact could have found the essential elements of the offense and also could have
found against Reese on the self-defense claim, beyond a reasonable doubt.  Id.

Reese
finds no fault in the trial court’s charge on self-defense, which instructed
the jury to acquit Reese if it found—or if it had reasonable doubt—that Reese
reasonably believed that his use of force was immediately necessary to protect
himself against Anderson’s use or attempted use of unlawful force.

Applicable
Law

A
person commits the offense of “assault” if he intentionally, knowingly, or
recklessly causes bodily injury to another, or if he intentionally or knowingly
threatens another with imminent bodily injury.  Tex. Penal Code Ann. §
22.01(a) (West 2011).  That offense becomes “aggravated” if, among other
possibilities, the person uses or exhibits a deadly weapon during commission of
the assault.  Id. § 22.02(a)(2).  A firearm is a deadly weapon per se. 
Id. § 1.07(a)(17)(A).

          A
person may lawfully use force against another “when and to the degree the actor
reasonably believes that force is immediately necessary to protect the actor
against the other’s use or attempted use of unlawful force.”  Id.
§ 9.31(a).  A person is not justified when using force against
another in response to mere verbal provocation.  Id. § 9.31(b)(1). 
One’s use of force in self-defense is presumed to be reasonable if the actor
had reason to believe that the person against whom the force was used was
committing or attempting to commit aggravated kidnapping, murder, sexual
assault, aggravated sexual assault, robbery, or aggravated robbery.  Id.
§ 9.31(a)(1)(C).

A
person may use deadly force in self-defense “when and to the degree the actor
reasonably believes the deadly force is immediately necessary (A) to protect
the actor against the other’s use of or attempted use of unlawful deadly force;
or (B) to prevent the other’s imminent commission of aggravated kidnapping,
murder, sexual assault, aggravated sexual assault, robbery or aggravated
robbery.”  Id. § 9.32(a)(2) (deadly force and defense of person).

The
defendant may not have provoked the person against whom the force was used.  Id.
§ 9.31(a)(2); see also Id. § 9.31(b)(4) (stating that provocation
bars subsequent self-defense claim unless the actor had previously abandoned
the encounter and the other nevertheless continues or attempts to use unlawful
force).

Viewing
the evidence in the light most favorable to the jury’s verdict, we hold that a
rational jury in this case could have logically found beyond a reasonable doubt
that Reese did not himself reasonably believe, or was unjustified in believing,
that deadly force was necessary to protect himself from the use or attempted
use of any deadly force by Anderson.  See Jackson, 443 U.S. at 319, 99
S. Ct. at 2789; Clayton, 235 S.W.3d at 778.  This is true for several
reasons.

First,
since there was no evidence that Anderson was attempting to kidnap, murder,
sexually assault, rob, enter or attempt to enter Reese’s apartment with force,
or remove or attempt to remove Reese from his apartment with force, the jury
was not required to presume that Reese’s use of deadly force was reasonable.  See
Tex. Penal Code Ann. § 9.31(a)(1) (A–C).

Second,
the evidence showed that Reese used foul language and threats toward Anderson. 
Admittedly, Anderson responded in a similar fashion and acted in a similar
manner toward Reese.  This could have been viewed by the jury as nothing more
than verbal provocation and, of course, a person is not justified in using
force, especially deadly force, against another in response to mere verbal
provocation.  See Id. § 9.31(b)(1).

          Third,
the evidence is undisputed that the initial confrontation between the parties
had ended at or near Reese’s front porch and that Reese had returned to his
apartment before he then chose to reinitiate the confrontation by grabbing his
revolver and going back to the front door and shooting toward Anderson.  Under
our law, once the initial encounter has ended, a defendant may not reinitiate
the encounter.  See Id. § 9.31(b)(4).

Furthermore,
the actor must reasonably believe that the use of force is immediately
necessary.  Id. § 9.32(a)(2).  The jury was entitled to conclude that
Reese’s acts of returning to his apartment after the initial verbal
confrontation had ended, then getting his gun and returning outside, and then
using deadly force in response to the use of non-deadly force did not support a
reasonable claim of necessary self-defense on Reese’s part.

The
jury was also entitled to believe Reese’s own testimony on cross-examination
that he retrieved his gun not out of self defense, but because he was angry and
wanted to scare Anderson.

Finally,
the jury could have reasonably determined that Reese’s decision to react to
Anderson’s choking him by getting his firearm from the apartment and shooting
Anderson was unreasonable, since our law permits a person to use deadly force
in self-defense only to the extent such force is immediately necessary in
response to the similar use of unlawful deadly force.  Id. § 9.32(a)(2)(A).

In
making a credibility determination, the jury could have reasonably determined
that Reese’s decision to use deadly force was unreasonable, given that Anderson
never used or threatened to use deadly force against him.  The jury could have
reasonably believed that Anderson grabbed Reese’s shirt collar and shook him,
but that Anderson never put his hands around Reese’s neck.  Reese, by his own
admission, never told the police that Anderson had choked him.  Even if
Anderson had placed his hands around Reese’s neck, as Reese first mentioned
during his trial testimony, that conduct did not authorize use of deadly force
by Reese under the facts presented here.

Given
all these considerations, we hold that sufficient evidence supported the jury’s
rejection of Reese’s self-defense claim.  We affirm the trial court’s judgment.

 

PER CURIAM

 

PANEL: 
CHARLES R. HOLCOMB (Senior Judge, Retired, Sitting By Assignment); DAUPHINOT and MEIER, JJ.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  July 14, 2011









[1]See Tex. R. App. P. 47.4.